CITY OF PHILADELPHIA and Lennox L. Moak, as Director of Finance, Individually and as representatives of the class, Plaintiffs,

v.

SECURITIES AND EXCHANGE COMMISSION, Roderick M. Hills, Chairman, Philip A. Loomis, Jr., Commissioner, John R. Evans, Commissioner, Irving M. Pollack, Commissioner, Paul F. Leonard, Administrator of Region 9, Thomas H. Monahan, Assistant Regional Administrator, Defendants.

Civ. A. No. 76–2396.

United States District Court, E. D. Pennsylvania.

May 19, 1977.

Sheldon L. Albert, City Sol. for the City of Philadelphia, Edwin P. Rome, Neal Steinman and Jeanne P. Wrobleski of Blank, Rome, Klaus & Comisky, Robert W. Sayre, Joseph B. Sturgis and John C. S. Kepner of Saul, Ewing, Remick & Saul, Philadelphia, Pa., for plaintiffs.

Edward S. Ellers, Philadelphia Pa., Harvey L. Pitt, Gen. Counsel, Paul Gonson, Associate Gen. Counsel, Kathryn B. McGrath, Asst. Gen. Counsel, Glynn L. Mays, Sammy S. Knight, John P. Sweeney, and Sue E. Auerbach of Securities and Exchange Commission, Washington, D. C., for defendants.

Before SEITZ, Chief Judge, and NEWCOMER and CAHN, District Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This case arises out of an SEC "preliminary investigation" into the offer, sale, and resale of securities of the City of Philadelphia during the last half of 1975. The City and its Director of Finance, Lennox L. Moak, brought this action to halt the investigation on their own behalf, and purportedly on behalf of a class of Pennsylvania political subdivisions and officials.

Defendants, who are the SEC and officials thereof, have moved to dismiss the case on grounds that: a) this court lacks jurisdiction to entertain it b) the complaint fails to state a claim on which relief can be granted. This is the decision on that motion.

## I.

The SEC's Philadelphia Branch Office began the present investigation in May of 1976. The Office has only undertaken a "preliminary" investigation, which is to say that no investigatory "order" has been issued. *Compare* 17 CFR 202.5 *with* 17 CFR 203.4. Consequently, under Commission rules the Office at this point may merely request the City's cooperation, and may not compel it to furnish evidence. In July of 1976, the Office did in fact request the City to furnish "[a]ny and all records, data, documentation, reports or other information in your possession or under your control with respect to or pertaining to the sale, resale and distribution" of certain City securities which had been sold during the latter half of 1975, "and with respect to the past, present or projected financial condition . . . of the City, during the period June 30, 1975 to January 1, 1976 . . ." The City was also informed that the Office would request City officials to testify under oath. The City, however, responded that it would not comply with the Office's requests. Pursuant to an agreement between the parties, the Office has now halted its investigation pending the progress of this action.

The Complaint alleges that the pendency of the "preliminary" investigation violates plaintiffs' rights under the Fifth and Tenth Amendments, and that the substantive provisions of the securities laws violate these rights as well. It also alleges that the Commission activities have caused and will cause injury to the City in that they undermine the confidence of investors and investment analysts, and thus, inter alia, will cause an increase in the interest rates the City must pay on its securities, which will make debt servicing and the provision of municipal services more difficult. Plaintiffs seek a declaratory judgment establishing that: 1) the defendants may not by formal or informal proceedings seek information from or conduct any investigation

of any member of the purported class 2) the provisions of the 1933 and 1934 Acts are unconstitutional facially and as applied to named plaintiffs and the purported class. Plaintiffs also seek parallel temporary and permanent injunctive relief.

## II.

▪ Defendants have questioned the substantiality of the constitutional questions raised by the Complaint, and thus the jurisdiction of this three-judge court. But the Supreme Court's decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), establishes that the Constitution imposes some limitations on how federal action may affect the "conduct of integral governmental functions," and we think it clear that the nature of these limitations is a sufficiently substantial question to support our jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 536–8, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

▪ Although the parties have not discussed the point, we note that that § 25(a) of the 1934 Act, which makes a Commission "order" reviewable only in the courts of appeals, does not deprive this court of its power to take jurisdiction of the case under 28 U.S.C. § 2282 and to review the issues in accordance with the provisions of the Administrative Procedure Act. *PBW Stock Exchange, Inc. v. Securities and Exchange Commission*, 485 F.2d 718 at n. 3 (3d Cir. 1973). *See Califano v. Mister Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Independent Broker-Dealers' Trade Association v. Securities and Exchange Commission*, 142 U.S.App.D.C. 384, 442 F.2d 132 (1971).

## III.

The defendants have raised several challenges to the justiciability of the case which require greater discussion.

▪ They first contend that the case is non-justiciable because the plaintiffs lack standing. The doctrine of standing, to the extent it is based on Article III's "case or controversy" requirement,[1] requires plaintiffs to allege facts "from which it reasonably could be inferred" that relief would "likely" remedy specific injuries to them, past or threatened, which "fairly can be traced" to the defendants. *Warth v. Seldin*, 422 U.S. 490, 504, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

▪ Defendants present three arguments to support their contention that plaintiffs lack standing.

First, they state that any deterioration in potential investors' confidence in the City was caused not by the investigation, but by the very factors which prompted the investigation. But while defendants deny that the investigation has had the alleged effect, the City disputes the point, and we "must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. at 501, 95 S.Ct. at 2206 (1975). It "reasonably could be inferred" that an injury to the financial reputation of the City is fairly traceable to the pendency of the investigation.

Defendants next argue that the allegations of injury are mere speculations as to how "unspecified third parties" might react to the pendency of the investigation, and that such speculations are insufficient to confer standing under the Supreme Court's decisions in *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), *Warth v. Seldin, supra*, and *Simon v. Eastern Kentucky Welfare Rights Organization, supra*. As the Supreme Court stated in *Eastern Kentucky*, this trilogy stands for the principle "that indirectness of injury, while not necessarily fatal to standing. . . ." may undermine the inference

---

1. The "prudential limitations" which underlie a second component of the law of standing do not indicate dismissal. This, for example, is not a case where the "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens;" nor does plaintiffs' claim depend on "the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. at 2205 (1975).

that plaintiffs' injuries "fairly can be traced" to the defendants in any given case. 426 U.S. at 41, 44, 96 S.Ct. 1917. We agree with the defendants that the harm involved here stems from the alleged reactions of investors to the SEC investigation, and thus may be said to flow only indirectly from the activities of the Commission. But we consider this case distinguishable from the Supreme Court trilogy in that the indirectness of the alleged injury does not mean that it is not fairly traceable to the defendants. It is a reasonable inference that potential investors who become aware of an SEC investigation will regard securities as less attractive, and will demand a higher rate of interest. As the SEC's Advisory Committee on Enforcement Policies and Practices said in its July 1, 1972 *Report*:

> The fact that an investigation has been ordered by the Commission itself is frequently interpreted by the public as a predetermination by the Commission that the party named in the Order has violated the law. Almost 40 years of repeated disclaimers have not succeeded in erasing that impression. pt. IV, pp. 18–19.

While this statement by the Advisory Committee refers in terms to investigations made pursuant to a formal Commission order, we believe it has strong implications for the present case, where the Commission has never acted to dispel the natural inference that its "preliminary" investigation into the financial affairs of the City is focused, in part, on possible securities violations by the City.

Defendants' third argument concerning standing is that prospective relief against further inquiry would not help the City, and might well increase its problems, since investors would conclude that it had been freed of SEC supervision, and was so afraid of what the investigation might disclose that it went to this court to cloak its finances in secrecy. Defendants' argument improperly assumes that the investigation, if prolonged, would not act as a continued affront to the City's trustworthiness and financial integrity. Admittedly, if we grant the relief plaintiffs have requested, many investors will remember that the investigation was judicially halted and did not clear the City. But we think it likely that the pendency of the investigation would tend to further erode investor confidence and also to vitiate any efforts the City might make to present a positive financial image. Moreover, it is simply not correct to say that the investing public as a whole is so suspicious of public officials and of the motives which underlie the making of legal arguments that they would interpret any decree we rendered in defendants' favor as merely one device in a scheme to coverup the City's financial embarrassments. We believe that many investors could appreciate that the City might want to stand on any legal rights it may have solely because doing so would aid the City's finances and would avoid setting bad precedents for the future.

Thus, we conclude that named plaintiffs do have standing. We express no view as to the propriety of class certification.

### IV.

■ Defendants next argue that the case is moot, since the City has already declined to cooperate with the informal inquiry, and there is only a "bare possibility of further action by the Commission or its staff." However, in *United States v. W. T. Grant Co.*, 345 U.S. 629, 632–3, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), the Supreme Court said that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot . . . [unless] 'there is no reasonable expectation that the wrong will be repeated.'" [citations omitted]. Defendants have failed to make the required showing. On the contrary, as the Commission admits in one of its Memoranda under the agreement between the parties "all Commission investigative activity in this matter has *temporarily* been halted, pending further proceedings in this action." [emphasis added].

■ Our conclusion that the constitutionality of the "preliminary" investigation is not moot under Article III also implies

that the likelihood of recurrence is sufficient for Article III ripeness. Apart from Article III, however, plaintiffs must also show that the agency action in question is sufficiently "final" for judicial review under the APA. 5 U.S.C. § 704. This question must be answered in the affirmative. Administrative remedies need not be exhausted when the constitutionality of the agency action is in question. *E.g., Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) and *Securities and Exchange Commission v. Wall Street Transcript Corp.,* 422 F.2d 1371 (2d Cir.), *certiorari denied,* 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970), which are relied upon by defendants, are not to the contrary. Indeed, in those cases the courts considered on the merits constitutional challenges to the enforcement of administrative subpoenas.

■ In sum, plaintiffs' challenge to the constitutionality of the "preliminary" investigation is ripe for our consideration. Separate ripeness questions, however, are posed by the challenges to the constitutionality of: a) a "formal investigative proceeding" —that is, one undertaken pursuant to a Commission order of investigation 17 CFR 203.4 b) the substantive provisions of the securities laws.[2]

In the first place, it is wholly speculative whether the SEC will ever order that a formal investigation be undertaken into the offer, sale, and resale of City securities. As to the constitutionality of the substantive provisions of the securities laws, the City has not alleged that it is considering acting in a way which may be contrary to the prohibitions of the securities laws or regulations. *Compare, e.g., Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Moreover, the SEC has, at this point, made neither formal nor informal efforts to secure the City's compliance with the substantive provisions of the Acts, and it is wholly speculative whether it will do so in the future. *Compare Regional Rail Reorganization Act Cases,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Lake Carriers Association v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). These issues are therefore not ripe.

We conclude that the complaint properly raises for review the constitutionality of the "preliminary" investigation into the offer, sale, and resale of City securities. We will not, however, decide the constitutionality of a "formal" investigation [3] or of the substantive provisions of the securities laws, as these issues are not ripe for review.

### V.

Plaintiffs' challenge to the constitutionality of the SEC's "preliminary" investigation proceeds on two grounds. They first argue that limitations inherent in the Commerce Clause,[4] and the Tenth Amendment prohibit Congress from authorizing the investigation because it impermissibly infringes upon the sovereignty of the Commonwealth of Pennsylvania, of which the City is a political subdivision. Second, plaintiffs argue that the statutes [5] and regulations authorizing

---

**2.** Under the 1975 amendments to the Exchange Act, the City as an issuer of securities is exempt from registration and reporting requirements prior to the sale of securities. 15 U.S.C. § 78o–4(d)(1)–(2) (Supp. V 1975). The amendments, however, do not expressly address the SEC's power *after* sale. Nor do the amendments exempt the City from the antifraud provisions of the securities laws.

**3.** We of course recognize that the considerations relevant to the constitutionality of the "preliminary" investigation may well be similar to those which are pertinent to the constitutionality of a "formal" investigation.

**4.** The defendants argue that even if the "preliminary" investigation cannot be authorized under the Commerce Clause, it is valid under the postal power. In view of our disposition of the Commerce Clause question, we need not address this contention.

**5.** 15 U.S.C. §§ 77s(b), 77t(a) authorize the SEC to investigate possible violations by any "person" of the 1933 Act; 15 U.S.C. § 77b(2) states that the term "person" includes any "government or political subdivision thereof." 15 U.S.C. § 78u(a) authorizes the SEC to investigate possible violations by any "person" of the 1934 Act, and to conduct investigations which

the investigation violate due process because they are impermissibly vague.

1. In *National League of Cities v. Usery, supra,* the Supreme Court invalidated amendments to the Fair Labor Standards Act which extended the Act's minimum wage and maximum hour provisions to almost all employees of states and their political subdivisions. The Court held that "insofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress" under the Commerce Clause. 426 U.S. at 852, 96 S.Ct. at 2474. It rested, in part, on the Tenth Amendment, which it found to be "an express declaration of . . . limits upon the authority of Congress to regulate the activities of States as States . . ." 426 U.S. at 842, 96 S.Ct. at 2470.

In the present case, plaintiffs allege that the pendency of the "preliminary" investigation disrupts the City's financing in several ways, chiefly by forcing the City to offer a higher rate of return on its securities. Thus, it is argued, the investigation operates to "directly displace the [City's] freedom to structure integral operations" in the area of finance. *National League of Cities v. Usery,* 426 U.S. at 852, 96 S.Ct. at 2474. Plaintiffs argue that their claim under *National League of Cities* entitles them to declaratory and injunctive relief preventing defendants from: a) "request[ing] production of documents or testimony from Plaintiffs and the members of the class" and b) "conduct[ing] any form of investigation of Plaintiffs and the members of the class."

Plaintiffs' amended complaint, fairly read, alleges that the "preliminary" investigation is aimed at possible securities violations by the City, and we must assume the truth of this allegation for purposes of this motion to dismiss. Thus, we must determine whether a "preliminary" investigation

aimed at least in part at possible securities violations by the City is, as plaintiffs assert, an impermissible intrusion into state sovereignty. If the SEC may properly make possible securities violations by the City a target of the "preliminary" investigation, it is true a fortiori that the Commission may "request production of documents or testimony" from the City. *See United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

The amendments to the Fair Labor Standards Act involved in *National League of Cities* directly commanded states and their political subdivisions to follow specified minimum wage and maximum hour provisions in their employment relations. The Supreme Court's concern that this command substituted federal choices for state choices so as to directly displace the states is evident at several points in its opinion. For example, the Court said that: "[i]f Congress may withdraw from the States the *authority* to make those fundamental employment decisions upon which their systems for performance of these functions must rest, we think there would be little left of the States' [sovereignty]." 426 U.S. at 851, 96 S.Ct. at 2474. (emphasis added). The Court also noted that "the dispositive factor is that Congress has attempted to exercise its Commerce Clause authority to *prescribe* minimum wages and maximum hours to be paid by the States in their capacities as sovereign governments." 426 U.S. at 852, 96 S.Ct. at 2474. (emphasis added).

In sum, we read *National League of Cities* to invalidate such legislation under the Commerce Clause as *orders* the states to act in "areas of traditional governmental functions," and which, by virtue of this order, substitutes federal for state choices in a manner which significantly limits the "States' freedom to structure integral operations" in such areas. As noted above, the City does allege that the investigation has a significant effect on the financing and dis-

will facilitate such functions as recommending legislation to Congress; 15 U.S.C. § 78c(a)(9) defines "person" to include any "government,

or political subdivision, agency, or instrumentality of a government."

288

tribution of municipal services, which are clearly "areas of traditional governmental functions," and for purposes of this motion to dismiss, we must accept the truth of this allegation. But the threshold requirement that the federal action *command* the City is lacking: the City has not been ordered to adopt any measure as to the financing and distribution of its services. Since there has been no command imposed upon the City in this case, it also necessarily follows that the alleged effect upon the City's "freedom to structure integral operations in areas of traditional governmental functions" is not due to a federal command.

Plaintiffs argue that the investigation has such an effect upon the City's access to funds that it leaves City officials with little choice as to how to conduct the City's finances, and thus in actuality orders the City as to how to conduct its affairs. This argument proves too much, since it implies that every instance in which federal action has a significant de facto effect upon states or their political subdivisions involves an impermissible interference with state sovereignty. We find no basis either in *National League of Cities,* or in the Commerce Clause and Tenth Amendment, on which to conclude that the innumerable statutes which have a significant de facto effect upon the states are invalid. Such de facto effect is a necessary attribute of a federal system. Indeed, we note that extending the states' immunity to include federal action other than that which is mandatory upon them [6] would invalidate such legislation as the Social Security Act, a measure

based upon the spending power which "seeks to" and does "affect the integral operations of state government," but persuades, rather than coerces the states, by offering funds to those whose plans qualify under the federal scheme.[7] *National League of Cities v. Usery,* 426 U.S. at 852 n.17, 96 S.Ct. 2465; *see Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937).

In sum, the "preliminary investigation does not constitute an impermissible intrusion into state sovereignty.

■ 2. Plaintiffs' second attack on the constitutionality of the statute and regulations authorizing the "preliminary" investigation is that they are void for vagueness. Much of plaintiffs' argument on the vagueness point is relevant only to the constitutionality of the substantive provisions of the securities laws, a question which, as we have noted, is not ripe for review. In fact, the only argument, possibly advanced, which is relevant to the constitutionality of the "preliminary" investigation is that the securities laws and regulations delegate undue discretion to the SEC in deciding what to investigate, since these laws and regulations, especially those pertaining to fraud, do not sufficiently specify what the City's obligations are. *See Gregory v. City of Chicago,* 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969). We conclude that the securities laws and regulations sufficiently specify the obligations imposed upon the City; the reasons for this conclusion are

---

**6.** The Supreme Court has made clear that the states' immunity does not even extend to all direct federal commands. In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court upheld the constitutionality of amendments to Title VII of the Civil Rights Act of 1964 which extend the coverage of the Act to the states as employers; the Court noted that the amendments were enacted under § 5 of the Fourteenth Amendment, and were not Commerce Clause measures like those involved in *National League of Cities. Fitzpatrick v. Bitzer,* 427 U.S. at 453 n.9, 96 S.Ct. 2666; *see National League of Cities v. Usery,* 426 U.S. at 852 n.17, 96 S.Ct. 2465.

Moreover, it is possible that the Court will hold that some legislation under the Commerce Clause may permissibly order the states to act

in "areas of traditional governmental functions." Justice Blackmun's concurring opinion states that: "I may misinterpret the Court's opinion, but it seems to me that it adopts a balancing approach, and does not outlaw federal power in areas such as environmental protection, where the federal interest is demonstrably greater and where state facility compliance with imposed federal standards would be essential." 426 U.S. at 856, 96 S.Ct. at 2476.

**7.** We need not discuss the proper treatment of federal action which has only a de facto effect on the states but is primarily motivated by the aim of "affect[ing]" the integral operations of state government."

sufficiently well set forth in other cases that they need not be repeated here. *See, e.g., Coplin v. United States,* 88 F.2d 652, 657 (9th Cir.), *cert. denied,* 301 U.S. 703, 57 S.Ct. 929, 81 L.Ed. 1357 (1937).

Plaintiffs' challenge to the constitutionality of the "preliminary" investigation will be dismissed for failure to state a claim upon which relief can be granted. To the extent the amended complaint challenges other provisions of the Act it will be dismissed for want of ripeness.