# FITZPATRICK ET AL. v. BITZER, CHAIRMAN, STATE EMPLOYEES' RETIREMENT COMMISSION ET AL.

No. 75–251.   Argued April 20–21, 1976—Decided June 28, 1976*

---

*Together with No. 75–283, *Bitzer, Chairman, State Employees' Retirement Commission, et al.* v. *Matthews et al.,* also on certiorari to the same court.

446

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, MARSHALL, BLACKMUN, and POWELL, JJ., joined. BRENNAN, J., *post*, p. 457, and STEVENS, J., *post*, p. 458, filed opinions concurring in the judgment.

*Paul W. Orth* argued the cause for petitioners in No. 75–251 and for respondents in No. 75–283. With him on the brief in No. 75–251 were *Austin Carey, Jr., Edward Gallant, Jack Greenberg,* and *Eric Schnapper.* With him on the brief in No. 75–283 were *Messrs. Carey* and *Gallant.*

*Sidney D. Giber,* Assistant Attorney General of Connecticut, argued the cause for respondents in No. 75–251 and for petitioners in No. 75–283. With him on the briefs were *Carl R. Ajello,* Attorney General, and *Bernard F. McGovern, Jr.,* Assistant Attorney General.

*Deputy Solicitor General Wallace* argued the cause for the United States as *amicus curiae* in both cases. With him on the brief were *Solicitor General Bork, Assistant Attorney General Pottinger,* and *Walter W. Barnett.*†

---

†Briefs of *amici curiae* urging reversal in No. 75–251 and affirmance in No. 75–283 were filed by *Michael H. Gottesman,*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

In the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of

*Armand Derfner, Robert M. Weinberg, Albert E. Jenner, Paul R. Dimond, William E. Caldwell, Nathaniel R. Jones, Vilma Martinez, Joel Contreras, Morris J. Baller, Melvin L. Wulf,* and *E. Richard Larson* for the Lawyers Committee for Civil Rights under Law et al. *Gary J. Greenberg* filed a brief for Alan Rabinovitch as *amicus curiae* urging reversal in No. 75–251. Briefs of *amici curiae* urging reversal in No. 75–283 were filed by *Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, *N. Eugene Hill* and *Edward P. O'Brien,* Assistant Attorneys General, *Edmund E. White, Richard M. Skinner, Gloria F. DeHart,* and *Patrick G. Golden,* Deputy Attorneys General, for the State of California; by *Louis J. Lefkowitz,* Attorney General, *Samuel A. Hirshowitz,* First Assistant Attorney General, and *Lillian Z. Cohen,* Assistant Attorney General, for the State of New York; and by *Robert P. Kane,* Attorney General, and *Lawrence Silver* and *Melvin R. Shuster,* Deputy Attorneys General, for the Commonwealth of Pennsylvania, joined by the Attorneys General for their respective States as follows: *Robert L. Shevin* of Florida, *Arthur K. Bolton* of Georgia, *Ronald Amemiya* of Hawaii, *Theodore L. Sendak* of Indiana, *Richard C. Turner* of Iowa, *Francis B. Burch* of Maryland, *John C. Danforth* of Missouri, *Paul L. Douglas* of Nebraska, *Robert List* of Nevada, *David H. Souter* of New Hampshire, *William F. Hyland* of New Jersey, *Rufus L. Edmisten* of North Carolina, *Allen I. Olson* of North Dakota, *William J. Brown* of Ohio, *Daniel R. McLeod* of South Carolina, *R. A. Ashley, Jr.,* of Tennessee, *John L. Hill* of Texas, *Andrew P. Miller* of Virginia, and *Chauncey H. Browning, Jr.,* of West Virigina. *Jack Greenberg* and *Eric Schnapper* filed a brief for the N. A. A. C. P. Legal Defense and Educational Fund, Inc., as *amicus curiae* urging affirmance in No. 75–283.

"race, color, religion, sex, or national origin." [1] The principal question presented by these cases is whether, as against the shield of sovereign immunity afforded the State by the Eleventh Amendment, *Edelman* v. *Jordan,* 415 U. S. 651 (1974), Congress has the power to authorize federal courts to enter such an award against the State as a means of enforcing the substantive guarantees of the Fourteenth Amendment. The Court of Appeals for the Second Circuit held that the effect of our decision in *Edelman* was to foreclose Congress' power. We granted certiorari to resolve this important constitutional question. 423 U. S. 1031 (1975). We reverse.

I

Petitioners in No. 75–251 sued in the United States District Court for the District of Connecticut on behalf of all present and retired male employees of the State of Connecticut. Their amended complaint asserted, *inter alia,* that certain provisions in the State's statutory retirement benefit plan discriminated against them because of their sex, and therefore contravened Title VII of the 1964 Act, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.* (1970 ed. and Supp. IV). Title VII, which originally did not include state and local govern-

---

[1] Section 703 (a) of the Civil Rights Act of 1964 (hereinafter 1964 Act), 78 Stat. 255, 42 U. S. C. § 2000e–2 (a) (1970 ed. and Supp. IV), provides:

"It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

"(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

ments, had in the interim been amended to bring the States within its purview.[2]

The District Court held that the Connecticut State Employees Retirement Act violated Title VII's prohibition against sex-based employment discrimination. 390 F. Supp. 278, 285–288 (1974).[3] It entered prospective injunctive relief in petitioners' favor against respondent state officials.[4] Petitioners also sought an award of retroactive retirement benefits as compensation for losses

---

[2] As relevant here, the definition of "person" in § 701 (a) of the 1964 Act, 78 Stat. 253, 42 U. S. C. § 2000e (a), was amended by § 2 (1) of the Equal Employment Opportunity Act of 1972 (hereinafter the 1972 Amendments), 86 Stat. 103, 42 U. S. C. § 2000e (a) (1970 ed., Supp. IV), to include "governments, governmental agencies, [and] political subdivisions."

The express exclusion of "a State or political subdivision thereof" provided in § 701 (b) of the former was stricken by § 2 (2) of the latter, 86 Stat. 103, 42 U. S. C. § 2000e (b) (1970 ed., Supp. IV). Section 2 (5) of the 1972 Amendments, 86 Stat. 103, 42 U. S. C. § 2000e (f) (1970 ed., Supp. IV), amended § 701 (f) of the 1964 Act, 42 U. S, C. § 2000e (f), to include within the definition of "employee" those individuals "subject to the civil service laws of a State government, governmental agency or political subdivision."

The 1972 Amendments retained the right of an individual aggrieved by an employer's unlawful employment practice to sue on his or her own behalf, upon satisfaction of the statutory procedural prerequisites, and made clear that that right was being extended to persons aggrieved by public employers. See 1972 Amendments, § 4 (a), 86 Stat. 104, 42 U. S. C. §§ 2000e–5 (a)–(g) (1970 ed., Supp. IV).

[3] Petitioners had also alleged that the retirement plan was contrary to the Equal Protection Clause of the Fourteenth Amendment, but in view of its ruling under Title VII the District Court found no reason to address the constitutional claim. 390 F. Supp., at 290.

[4] In No. 75–251, respondent Bitzer is the Chairman of the State Employees' Retirement Commission, and the other respondents are the Treasurer and the Comptroller of the State of Connecticut. These officials are cross-petitioners in No. 75–283.

caused by the State's discrimination,[5] as well as "a reasonable attorney's fee as part of the costs." [6] But the District Court held that both would constitute recovery of money damages from the State's treasury, and were therefore precluded by the Eleventh Amendment and by this Court's decision in *Edelman* v. *Jordan, supra.*

On petitioners' appeal,[7] the Court of Appeals affirmed in part and reversed in part. It agreed with the District Court that the action, "insofar as it seeks damages, is in essence against the state and as such is subject to the Eleventh Amendment." 519 F. 2d 559, 565 (1975). The Court of Appeals also found that under the 1972 Amendments to Title VII, "Congress intended to authorize a private suit for backpay by state employees against the state." *Id.,* at 568. Notwithstanding this statutory authority, the Court of Appeals affirmed the District Court and held that under *Edelman* a "private federal action for retroactive damages" is not a "constitu-

---

[5] Section 706 (g) of the 1964 Act, 78 Stat. 261, as amended, 86 Stat. 107, 42 U. S. C. § 2000e–5 (g) (1970 ed., Supp. IV), provides in part:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission."

[6] See § 706 (k) of the 1964 Act, 78 Stat. 261, 42 U. S. C. § 2000e–5 (k).

[7] Respondent state officials did not appeal from the District Court's finding of a Title VII violation and the entry of prospective injunctive relief.

tionally permissible method of enforcing Fourteenth Amendment rights." 519 F. 2d, at 569. It reversed the District Court and remanded as to attorneys' fees, however, reasoning that such an award would have only an "ancillary effect" on the state treasury of the kind permitted under *Edelman, supra,* at 667–668. 519 F. 2d, at 571. The petition filed here by the state employees in No. 75–251 contends that Congress does possess the constitutional power under § 5 of the Fourteenth Amendment to authorize their Title VII damages action against the State. The state officials' cross-petition, No. 75–283, argues that under *Edelman* the Eleventh Amendment bars any award of attorneys' fees here because it would be paid out of the state treasury.

## II

In *Edelman* this Court held that monetary relief awarded by the District Court to welfare plaintiffs, by reason of wrongful denial of benefits which had occurred previous to the entry of the District Court's determination of their wrongfulness, violated the Eleventh Amendment. Such an award was found to be indistinguishable from a monetary award against the State itself which had been prohibited in *Ford Motor Co.* v. *Department of Treasury,* 323 U. S. 459, 464 (1945). It was therefore controlled by that case rather than by *Ex parte Young,* 209 U. S. 123 (1908), which permitted suits against state officials to obtain prospective relief against violations of the Fourteenth Amendment.

*Edelman* went on to hold that the plaintiffs in that case could not avail themselves of the doctrine of waiver expounded in cases such as *Parden* v. *Terminal R. Co.,* 377 U. S. 184 (1964), and *Employees* v. *Missouri Public Health Dept.,* 411 U. S. 279 (1973), because the necessary predicate for that doctrine was congres-

sional intent to abrogate the immunity conferred by the Eleventh Amendment. We concluded that none of the statutes relied upon by plaintiffs in *Edelman* contained any authorization by Congress to join a State as defendant. The Civil Rights Act of 1871, 42 U. S. C. § 1983, had been held in *Monroe* v. *Pape*, 365 U. S. 167, 187–191 (1961), to exclude cities and other municipal corporations from its ambit; that being the case, it could not have been intended to include States as parties defendant. The provisions of the Social Security Act relied upon by plaintiffs were held by their terms not to "authorize suit against anyone," 415 U. S., at 674, and they, too, were incapable of supplying the predicate for a claim of waiver on the part of the State.

All parties in the instant litigation agree with the Court of Appeals that the suit for retroactive benefits by the petitioners is in fact indistinguishable from that sought to be maintained in *Edelman*, since what is sought here is a damages award payable to a private party from the state treasury.[8]

Our analysis begins where *Edelman* ended, for in this Title VII case the "threshold fact of congressional authorization," *id.*, at 672, to sue the State as employer is clearly present. This is, of course, the prerequisite found present in *Parden* and wanting in *Employees*. We are aware of the factual differences between the type of state activity involved in *Parden* and that involved in the present case, but we do not think that difference is material for our purposes. The congressional authorization involved in *Parden* was based on the power of Congress under the Commerce Clause; here, however, the

---

[8] The Court of Appeals rejected petitioners' arguments that the retroactive benefits would not be paid out of public funds from the state treasury, and that the rule in *Edelman* and *Ford Motor Co.* was therefore inapplicable. 519 F. 2d, at 564–565. Petitioners have not challenged this ruling here.

Eleventh Amendment defense is asserted in the context of legislation passed pursuant to Congress' authority under § 5 of the Fourteenth Amendment.[9]

As ratified by the States after the Civil War, that Amendment quite clearly contemplates limitations on their authority. In relevant part, it provides:

> "Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> .            .            .            .            .
>
> "Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

The substantive provisions are by express terms directed at the States. Impressed upon them by those provisions are duties with respect to their treatment of private individuals. Standing behind the imperatives is Congress' power to "enforce" them "by appropriate legislation."

The impact of the Fourteenth Amendment upon the relationship between the Federal Government and the States, and the reach of congressional power under § 5, were examined at length by this Court in *Ex parte Virginia,* 100 U. S. 339 (1880). A state judge had been arrested and indicted under a federal criminal statute

---

[9] There is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment. See, *e. g.,* H. R. Rep. No. 92–238, p. 19 (1971); S. Rep. No. 92–415, pp. 10–11 (1971). Cf. *National League of Cities* v. *Usery,* 426 U. S. 833 (1976).

prohibiting the exclusion on the basis of race of any citizen from service as a juror in a state court. The judge claimed that the statute was beyond Congress' power to enact under either the Thirteenth [10] or the Fourteenth Amendment. The Court first observed that these Amendments "were intended to be, what they really are, limitations of the power of the States and enlargements of the power of Congress." *Id.*, at 345. It then addressed the relationship between the language of § 5 and the substantive provisions of the Fourteenth Amendment:

"The prohibitions of the Fourteenth Amendment are directed to the States, and they are to a degree restrictions of State power. It is these which Congress is empowered to enforce, and to enforce against State action, however put forth, whether that action be executive, legislative, or judicial. Such enforcement is no invasion of State sovereignty. No law can be, which the people of the States have, by the Constitution of the United States, empowered Congress to enact. . . . It is said the selection of jurors for her courts and the administration of her laws belong to each State; that they are her rights. This is true in the general. But in exercising her rights, a State cannot disregard the limitations which the Federal Constitution has applied to her power. Her rights do not reach to that extent. Nor can she deny to the general government the right to exercise all its

---

[10] "Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

"Section 2. Congress shall have power to enforce this article by appropriate legislation."

granted powers, though they may interfere with the full enjoyment of rights she would have if those powers had not been thus granted. Indeed, every addition of power to the general government involves a corresponding diminution of the governmental powers of the States. It is carved out of them.

.     .     .     .     .

"The argument in support of the petition for a *habeas corpus* ignores entirely the power conferred upon Congress by the Fourteenth Amendment. Were it not for the fifth section of that amendment, there might be room for argument that the first section is only declaratory of the moral duty of the State . . . . But the Constitution now expressly gives authority for congressional interference and compulsion in the cases embraced within the Fourteenth Amendment. It is but a limited authority, true, extending only to a single class of cases; but within its limits it is complete." *Id.*, at 346–348.

*Ex parte Virginia*'s early recognition of this shift in the federal-state balance has been carried forward by more recent decisions of this Court. See, *e: g., South Carolina* v. *Katzenbach,* 383 U. S. 301, 308 (1966); *Mitchum* v. *Foster,* 407 U. S. 225, 238–239 (1972).

There can be no doubt that this line of cases has sanctioned intrusions by Congress, acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of autonomy previously reserved to the States. The legislation considered in each case was grounded on the expansion of Congress' powers—with the corresponding diminution of state sovereignty—found to be intended by the Framers and made part of the Constitution upon the States' ratification of those

Amendments, a phenomenon aptly described as a "carv-[ing] out" in *Ex parte Virginia, supra,* at 346.

It is true that none of these previous cases presented the question of the relationship between the Eleventh Amendment and the enforcement power granted to Congress under § 5 of the Fourteenth Amendment. But we think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, see *Hans* v. *Louisiana,* 134 U. S. 1 (1890), are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. In that section Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.[11] See *Edelman* v. *Jordan,* 415 U. S. 651 (1974); *Ford Motor Co.* v. *Department of Treasury,* 323 U. S. 459 (1945).

## III

In No. 75–283, the state officials contest the Court of Appeals' conclusion that an award of attorneys' fees in

---

[11] Apart from their claim that the Eleventh Amendment bars enforcement of the remedy established by Title VII in this case, respondent state officials do not contend that the substantive provisions of Title VII as applied here are not a proper exercise of congressional authority under § 5 of the Fourteenth Amendment.

this case would under *Edelman* have only an "ancillary effect" on the state treasury and could therefore be permitted as falling outside the Eleventh Amendment under the doctrine of *Ex parte Young*, 209 U. S. 123 (1908). 415 U. S., at 667–668. We need not address this question, since, given the express congressional authority for such an award in a case brought under Title VII,[12] it follows necessarily from our holding in No. 75–251 that Congress' exercise of power in this respect is also not barred by the Eleventh Amendment. We therefore affirm the Court of Appeals' judgment in No. 75–283 on this basis.

The judgment in No. 75–251 is

*Reversed.*

The judgment in No. 75–283 is

*Affirmed.*

MR. JUSTICE BRENNAN, concurring in the judgment.

This suit was brought by present and retired employees of the State of Connecticut against the State Treasurer, the State Comptroller, and the Chairman of the State Employees' Retirement Commission. In that circumstance, Connecticut may not invoke the Eleventh Amendment, since that Amendment bars only federal-court suits against States by citizens of other States. Rather, the question is whether Connecticut may avail itself of the nonconstitutional but ancient doctrine of sovereign immunity as a bar to a claim for damages under Title VII. In my view Connecticut may not assert sovereign immunity for the reason I expressed in dissent in *Employees* v. *Missouri Public Health Dept.*, 411 U. S. 279, 298 (1973): The States surrendered that immunity, in Hamilton's words, "in the plan of the Convention" that formed the Union, at least insofar as the States granted Congress

---

[12] See n. 6, *supra.*

specifically enumerated powers. See *id.,* at 319 n. 7; *Edelman* v. *Jordan,* 415 U. S. 651, 687 (1974) (BRENNAN, J., dissenting); *Parden* v. *Terminal R. Co.,* 377 U. S. 184 (1964). Congressional authority to enact the provisions of Title VII at issue in this case is found in the Commerce Clause, Art. I, § 8, cl. 3, and in § 5 of the Fourteenth Amendment, two of the enumerated powers granted Congress in the Constitution. Cf. *Oregon* v. *Mitchell,* 400 U. S. 112, 131–134 (1970) (Black, J.); *id.,* at 135–150 (Douglas, J.); *id.,* at 216–217 (Harlan, J.); *id.,* at 236–281 (BRENNAN, WHITE, and MARSHALL, JJ.); *id.,* at 282–284 (STEWART, J.); *Katzenbach* v. *Morgan,* 384 U. S. 641, 651 (1966). I remain of the opinion that "because of its surrender, no immunity exists that can be the subject of a congressional declaration or a voluntary waiver." *Employees* v. *Missouri Public Health Dept., supra,* at 300.

I therefore concur in the judgment of the Court.

MR. JUSTICE STEVENS, concurring in the judgment.

In my opinion the commerce power is broad enough to support federal legislation regulating the terms and conditions of state employment and, therefore, provides the necessary support for the 1972 Amendments to Title VII, even though Congress expressly relied on § 5 of the Fourteenth Amendment. But I do not believe plaintiffs proved a violation of the Fourteenth Amendment, and because I am not sure that the 1972 Amendments were "needed to secure the guarantees of the Fourteenth Amendment," see *Katzenbach* v. *Morgan,* 384 U. S. 641, 651, I question whether § 5 of that Amendment is an adequate reply to Connecticut's Eleventh Amendment defense. I believe the defense should be rejected for a different reason.

Even if the Eleventh Amendment does cover a citizen's

suit against his own State,[1] it does not bar an action against state officers enforcing an invalid statute, *Ex parte Young,* 209 U. S. 123, 159–160. Since the Connecticut pension law has been held to be invalid, at least in part, *Ex parte Young* makes it clear that the federal court properly acquired jurisdiction of the proceeding.

The Eleventh Amendment issue presented is whether the court has power to enter a judgment payable immediately out of trust assets which subsequently would be reimbursed from the general revenues of the State. Although I have great difficulty with a construction of the Eleventh Amendment which acknowledges the federal court's jurisdiction of a case and merely restricts the kind of relief the federal court may grant,[2] I must recognize that it has been so construed in *Edelman* v. *Jordan,* 415 U. S. 651, and that the language of that opinion would seem to cover this case. However, its actual holding appears to be limited to the situation in which the award is payable directly from state funds and "not as a necessary consequence of compliance in the future" with a substantive determination. *Id.,* at 668.

The holding in *Edelman* does not necessarily require the same result in this case; this award will not be paid directly from the state treasury, but rather from two

---

[1] As Mr. Chief Justice Marshall has pointed out, the Eleventh Amendment is not literally applicable to this situation. See *Cohens* v. *Virginia,* 6 Wheat. 264, 412; see also *Employees* v. *Missouri Public Health Dept.,* 411 U. S. 279, 298–324 (BRENNAN, J., dissenting).

[2] Neither the language of the Eleventh Amendment nor the rationale of *Ex parte Young* draws any distinction between proceedings in law or in equity. The Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U. S. Const., Amdt. 11.

separate and independent pension funds. The fact that the State will have to increase its future payments into the funds as a consequence of this award does not, in my opinion, sufficiently distinguish this case from other cases in which a State may be required to conform its practices to the Federal Constitution and thereby to incur additional expense in the future. Since the rationale of *Ex parte Young* remains applicable to such cases, and since this case is not squarely covered by the holding in *Edelman,* I am persuaded that it is proper to reject the Eleventh Amendment defense.

With respect to the fee issue, even if the Eleventh Amendment were applicable, I would place fees in the same category as other litigation costs. Cf. *Fairmont Co.* v. *Minnesota,* 275 U. S. 70.