CONSOLIDATED RAIL CORPORATION,
Plaintiff,

v.

NEVINS–PATRILLO WAREHOUSE & DISTRIBUTION SYSTEM, INC., and Jeffrey Nevins, Defendants.

NEVINS–PATRILLO WAREHOUSE & DISTRIBUTION SYSTEM, INC., Defendant and Third–party Plaintiff,

v.

ARMEL ICE CREAM COMPANY, INC., Third–party Defendant.

ARMEL WAREHOUSE, INC., Third–party Defendant & Fourth–party Plaintiff,

v.

The STATE OF NEW YORK, Executive Department, Office of General Services, Fourth–party Defendant.

No. 79 Civ. 2588 (HFW).

United States District Court, S. D. New York.

June 26, 1980.

Michael J. Siris, New York City, for plaintiff.

Cimini & Snyder, New York City, for Armel by Alan M. Snyder, New York City, of counsel.

Robert Abrams, Atty. Gen. of State of New York, New York City, for the State by Robert A. Forte, Asst. Atty. Gen., New York City, of counsel.

MEMORANDUM DECISION

WERKER, District Judge.

This is a Rule 12(b)(6) motion by fourth–party defendant, the Executive Department of the Office of General Services of the State of New York (the "State"), to dismiss the complaint of plaintiff Consolidated Rail Corporation ("Conrail") and the fourth–party complaint of fourth–party plaintiff, Armel Warehouse Inc. ("Armel"). For the reasons that follow, the motion is denied.

The State is sued herein because of the activities of the Bureau of Government Donated Foods Distribution of the Office of General Services (the "Bureau"). The Bureau receives from the United States Department of Agriculture (the "U.S.D.A.") donations of food which are then sold by the Bureau to participating school districts primarily in New York City. During 1977, 1978 and 1979 Conrail carried goods for the U.S.D.A. from Kansas City to the Bureau in New York. Armel contracted with the Bureau to store the goods in its warehouses and contracted with Nevins–Patrillo Warehouse Inc. ("Nevins–Patrillo") to act as take–care consignee and to unload the cars. Conrail commenced this action against Nevins–Patrillo under the Interstate Commerce Act, 49 U.S.C. § 1 *et seq.*, alleging that Nevins–Patrillo had violated the tariff laws and breached its contractual obligations. Conrail seeks demurrage charges exceeding $100,000.

Nevins–Patrillo counterclaimed against Conrail and also commenced a third–party action against Armel, as consignee, for indemnification. Armel in turn brought a counterclaim against Nevins–Patrillo and a claim against Conrail for its continued assignment of the rail cars to Nevins–Patrillo after Armel allegedly notified Conrail and the Bureau of the reconsignment of the rail cars. Armel commenced a fourth–party action against the State based on the Bureau's alleged failure to notify Conrail and the U.S.D.A. to send shipments to Armel's new consignee. Finally, Conrail brought a claim against the State for the Bureau's alleged failure to timely unload rail cars transporting its goods.

Conrail and Armel each seek to place the responsibility for certain demurrage and diversion charges upon the State. The State asserts that the complaints must be dismissed by reason of its eleventh amendment immunity.[1] It alleges that a judgment against the Bureau would constitute a judgment against moneys in the state treasury and that all revenues generated by the Bureau flow back to the treasury to offset funds appropriated to the Bureau by the State. Conrail and Armel contend that the Bureau is financially independent of the State and that any judgment against the Bureau will not be paid out of the state treasury. They contend that the Bureau was performing a nongovernmental and proprietary function in contracting with Armel, Conrail and the U.S.D.A. for transportation and storage of rail car shipments. They further maintain that the Bureau is a financially independent entity and that the only funding that it receives from the State is a "first instance appropriation" which is a loan that must be repaid out of the Bureau's own operating revenues.

■ The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. Such a motion must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Conrail and Armel are correct in their assertion that not all state agencies are protected by the eleventh amendment. In *Bowen v. Hackett,* 387 F.Supp. 1212, 1220 (D.R.I. 1975), the court observed that "[t]here has developed a clear line of judicial authority which has held that if the legislature has intentionally insulated the treasury of the state from any liabilities that a particular financially self–sustaining instrumentality might incur, that instrumentality does not constitute the 'alter ego' of the State, and suit against such a body or its officers is not barred by the Eleventh Amendment." *See also Matherson v. Long Island State Park Commission,* 442 F.2d 566 (2d Cir. 1971). The issue thus confronted by this court is whether the Bureau is a financially independent and self–sustaining state agency not entitled to eleventh amendment immunity.

---

1. The eleventh amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state."

After a thorough review of the complaints filed herein, the court finds that Conrail and Armel have stated facts which, if proven true, may be sufficient to entitle them to relief from the Bureau. In *Fitzpatrick v. Bitzer*, 519 F.2d 559, 564 (2d Cir. 1975), *modified*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Second Circuit held that:

> In determining whether a separate state agency or institution shares the Eleventh Amendment shield as an "alter ego" of the state, a court must look to numerous factors, no one of which is conclusive. . . . The most important, of course, is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury. . . . Also to be considered is whether the entity sued is performing a governmental or proprietary function, whether it has been separately incorporated, whether it has the power to sue and be sued and enter into contracts, the degree of autonomy over its operations, and whether the state has immunized itself from responsibility for the agency's operation. (citations omitted).

The materials provided to the court on this motion do not conclusively answer these questions. It is clear that at this juncture, the issue of whether or not the Bureau is shielded by the eleventh amendment cannot be resolved.

In accordance with the above, the motion to dismiss is denied without prejudice to renewal by motion for summary judgment. The State is granted leave to move for summary judgment after a 30–day period of discovery on the question of whether the Bureau is for eleventh amendment purposes an "alter ego" of the State and, more specifically, whether in the event Conrail and Armel prevail, judgment would have to be paid out of the state treasury. Should the State determine to file such a motion, the motion is to be supported and opposed by affidavits based on personal knowledge, memoranda of law, and Local Rule 9(g) statements. Affidavits of attorneys who do not have personal knowledge will be excluded in accordance with Fed.R.Civ.P. 56(e).

So ordered.