UNITED STATES of America

v.

UNION GAS COMPANY

v.

BOROUGH OF STROUDSBURG.

Civ. A. No. 83–2456.

United States District Court,
E.D. Pennsylvania.

Nov. 15, 1983.

Edward S.G. Dennis, Jr., U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Joseph J.C. Donovan, U.S. Environmental Protection Agency, Region III, Philadelphia, Pa., for the U.S.

David H. Marion, Robert A. Swift, Philadelphia, Pa., for Union Gas Co.

Ralph A. Matergia, Stroudsburg, Pa., for Borough of Stroudsburg.

LeRoy S. Zimmerman, Atty. Gen., Marc G. Brecher, Deputy Atty. Gen., Philadelphia, Pa., for Com. of Pa.

MEMORANDUM

BECHTLE, District Judge.

█ The United States of America has brought suit against the Union Gas Compa-

ny ("Union Gas") under sections 104 and 107 of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA" or "the Act"), 42 U.S.C. §§ 9604 and 9607, and sections 311(b)(3) and 311(f)(2) of the Clean Water Act, 33 U.S.C. §§ 1321(b)(3) and 1321(f)(2), for reimbursement of costs of removal and remedial action incurred in the clean-up of hazardous substances, released from a facility allegedly owned and operated by Union Gas, into Brodhead Creek in Stroudsburg, Pennsylvania. Union Gas has filed a third party complaint under CERCLA against the Commonwealth of Pennsylvania and the Borough of Stroudsburg, alleging that the third party defendants are owners and operators of the facility in question and are therefore responsible for the release of any hazardous substances into Brodhead Creek. Presently before the court is the Commonwealth of Pennsylvania's motion to dismiss the third party complaint on the ground that jurisdiction over it is barred by the Eleventh Amendment to the United States Constitution. As set out below, the court agrees that the Eleventh Amendment bars this suit insofar as the Commonwealth is concerned. Therefore, its motion to dismiss shall be granted.

■ The Eleventh Amendment to the federal Constitution embodies the doctrine of state sovereign immunity. It provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

Accordingly, suits against a state by citizens from either another state or a foreign state are barred. Additionally, although the amendment does not expressly address suits against a state by its own citizens, the Supreme Court has recognized that such suits are also barred. *Edelman v. Jordan,* 415 U.S. 651, 653, 94 S.Ct. 1347, 1351, 39 L.Ed.2d 662 (1974) (citations omitted).

■ Exceptions to the states' Eleventh Amendment sovereign immunity exist in situations where either the state has consented to the filing of such a suit, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), or Congress has abrogated the states' sovereign immunity by explicit statutory mandate. *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Employees v. Missouri Public Health Dept.,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1974); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Union Gas contends that it fits within the latter category. Union Gas claims that in enacting CERCLA, Congress effectively abrogated the states' immunity from suit by private citizens seeking indemnity for costs incurred in the clean-up of hazardous waste sites.

■ Union Gas's position must be considered in light of a line of Supreme Court cases, the holdings of which may be distilled into a rule which the court shall call the "clear statement rule." The principle embodied in the clear statement rule is that a state cannot be sued pursuant to the liability provisions of a federal law unless Congress provides a clear statement that it intended to abrogate the states' immunity with respect to that law. The origin of this rule may be traced to *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), wherein the Court faced, for the first time, a state's claim of immunity against suit by an individual upon a cause of action expressly created by Congress. The issue to be decided was whether a state that owned and operated a railroad in interstate commerce could successfully plead sovereign immunity in a federal suit brought against the railroad by its employee under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* The Court's analysis focused on the question of whether Congress, in enacting

the FELA, intended to subject a state to suit under the circumstances presented. After reviewing the terms and purposes of the FELA, the Court concluded that indeed Congress had intended to allow states to be sued under the FELA's liability provisions. The case ultimately turned on the determination that the state, by engaging itself in the railroad business for profit, had entered into an area normally occupied by private persons and corporations. It had therefore consented to be subject to the federal regulations applicable to the railroad industry and had waived its sovereign immunity from a suit under the FELA.

The *Parden* decision was subsequently limited in *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), a case filed against administrative departments of the State of Missouri by state employees seeking overtime compensation allegedly due them under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Despite express language in the Act that its coverage extended to certain state employees, the Court refused to find that Congress had lifted the sovereign immunity of the states "where the purpose of Congress to give force to the Supremacy Clause by lifting the sovereignty of the States and putting the States on the same footing as other employers is not clear." *Id.* 411 U.S. at 287, 93 S.Ct. at 1619.[1] After reviewing the pertinent legislative history of the FLSA the Court concluded that if Congress intended to deprive the states of their constitutional immunity, it would not have done so silently. Since there was no "clear language" in either the statute itself or its legislative history which would indicate that the states' constitutional immunity was swept away, the Court ruled that the Eleventh Amendment barred the employees' suits against their state employer. 411 U.S. at 285, 93 S.Ct. at 1618.

In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court reversed the Seventh Circuit's holding that a state, by participating in a federal-state aid program governed by federal regulations, had "constructively consented" to a citizen's suit related to the state's administration of that program. The *Edelman* Court reiterated that in considering a claim of surrender of Eleventh Amendment immunity in the face of federal legislation, "we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Id.* 415 U.S. at 673, 94 S.Ct. at 1361 (citations omitted).[2]

Congressional awareness and compliance with the Supreme Court decisions setting out the clear statement rule cannot be disputed. Congress has, through clear statutory language and legislative intent, enacted a number of laws effectively abrogating a state's immunity in federal court. *See, e.g., Parks v. Pavkovic*, 536 F.Supp. 296, 309 (N.D.Ill.1982) (Education for All Handicap Children Act of 1975 specifically intended to impose liability on states for certain education costs); *Oneida Indian Nation of Wisconsin v. State of New York*,

---

**1.** The holding did not render the extension of coverage to state employees meaningless because § 16(c) of the FLSA permits the Secretary of Labor to bring suit on behalf of state employees for unpaid wages.

**2.** Following *Edelman*, the decisions in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); and *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), have reaffirmed the principle that the "clear statement rule" is the appropriate guideline for examining claims that Congress has lifted Eleventh Amendment immunity through its enactment of particular legislation.

Although these cases concern legislation passed pursuant to the Fourteenth Amendment, while the legislation at issue in *Employees, Parden,* and *Edelman* was passed pursuant to Article I, the distinction is not material insofar as the existence of the clear statement rule is concerned. *See Fitzpatrick, supra,* 427 U.S. at 452, 96 S.Ct. at 2669. Succinctly stated, the Fourteenth Amendment cases focus on whether § 5 of the Fourteenth Amendment itself provides the clear statement by Congress necessary to allow abrogation of the Eleventh Amendment. Of course, such discussions assume that the clear statement rule is the starting point for the analysis.

520 F.Supp. 1278, 1305 (N.D.N.Y.1981) (intent to abrogate state immunity inferred from congressional intent, statutory language and special relationship between the Indian tribe and federal government); *modified on other grounds*, 691 F.2d 1070 (2d Cir.1982); *Witter v. Pennsylvania Nat'l Guard*, 462 F.Supp. 299, 306 (E.D.Pa. 1978) (Vietnam Era Veterans Readjustment Act is an express authorization of federal suits against a state for back pay). Abrogation of immunity in these cases was premised on a finding that in enacting the particular legislation at issue, Congress clearly expressed its intent to allow states to be sued. *Compare Savage v. Commonwealth of Pennsylvania*, 475 F.Supp. 524, 529 (E.D.Pa.1979) (Civil Rights Act of 1871 not intended by Congress to abrogate a state's immunity (citing *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)); *Municipal Authority of Bloomsburg v. Dept. of Environmental Resources*, 496 F.Supp. 686, 689 (M.D.Pa. 1980) (Federal Water Pollution Control Act amendments did not abrogate the states' immunity); *Stubbs v. Kline*, 463 F.Supp. 110, 116 (W.D.Pa.1978) (Rehabilitation Act of 1973 did not contain the requisite congressional intent to abrogate a state's Eleventh Amendment immunity).

Applying the clear statement rule to the facts of the present case indicates that allowance of the claim against the Commonwealth of Pennsylvania depends on a finding that Congress expressly intended to abrogate a state's sovereign immunity.[3] A review of the statutory provisions and legislative history of CERCLA, however, reveals that there is no clear statement of such an intent in CERCLA.

Turning to the actual statutory provisions themselves, the court finds nothing to indicate that Congress intended to allow states to be sued by private citizens under CERCLA. Union Gas's assertion that Congress did intend to lift the states' sovereign immunity centers upon language in Section 9607 that any "person" responsible for illegal toxic waste dumping is liable to other "persons" for costs incurred in the clean-up operation.[4]

**3.** In applying the clear statement rule to the present case, it should initially be noted that the Supreme Court has not yet addressed whether a state can be specifically named as a defendant in a waiver of abrogation case, where the state is being sued under a federal statute, as opposed to a consent case, where the state is being sued under state law. Cf. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1979); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). For purposes of deciding the present motion, however, this court will assume, without deciding, that a state may be specifically named as a defendant in a suit under a federal statute which abrogates the states' Eleventh Amendment immunity. Of course, a state may, on its own accord, waive its sovereign immunity. *Parden v. Terminal R. Co., supra*. The Third Circuit Court of Appeals has ruled, however, that while Pennsylvania has waived its sovereign immunity in state courts, it has not consented to suits filed in federal court. *Skehan Bd. of Trustees of Bloomsburg*, 669 F.2d 142, 147 (3d Cir.1982), cert. denied, — U.S. ——, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

**4.** Section 9607 provides that:
Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, *shall be liable for*—
(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
(C) damages for injury to, destruction of, or loss of natural resources, including the rea-

Section 9601(21) defines a person, for purposes of CERCLA, as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a state, or any interstate body."

Union Gas argues that, since a "person" includes a state within the meaning of CERCLA, 42 U.S.C. § 9601(21), a state would be liable to a private litigant under § 9607. This court cannot agree. A similar argument concerning the Fair Labor Standards Act ("FLSA") was suggested by plaintiffs and rejected by the Court in *Employees v. Missouri Public Health Dept., supra,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251. In *Employees,* the term "employers," within the meaning of FLSA, included state-run health institutions. The Supreme Court found, however, that despite this inclusion, there was no indication of a congressional purpose to permit a citizen to sue the state in federal court. 411 U.S. at 285, 93 S.Ct. at 1618. The Court refused to imply such a purpose merely because the statute defined "employers" so as to include a particular state-run institution. In view of *Employees,* Union Gas's argument as to the combined effect of Sections 9607 and 9601(21) of CERCLA must be rejected. Any congressional waiver in CERCLA of the states' Eleventh Amendment immunity from suit must therefore be found in the statute's legislative history.

A review of the legislative background of CERCLA, however, reveals nothing to support a finding that Congress clearly expressed an intent to abrogate a state's immunity from liability. Neither the House nor the Senate reports indicated an intent to include a governmental entity as a defendant in an action brought by a private party. The Senate debates, however, made numerous references to private companies potentially liable under CERCLA. During one of these debates, it was expressly stated that a specific purpose of the CERCLA

or "Superfund" liability provisions is to "provide that the fund be financed largely by those *industries and consumers* who *profit* from products and services associated with the hazardous substances which impose risks on society." 126 Cong.Rec. S14963–64 (daily ed. Nov. 24, 1980) (statement of Sen. Randolph) (emphasis added). The Senate debates further emphasized that "[i]ssues of liability not resolved by this act, if any, shall be governed by traditional and evolving principles of common law." 126 Cong.Rec. at S14964. This court reads this last statement to include the common law doctrine of sovereign immunity embodied in the Eleventh Amendment.

In sum, since neither the statutory provisions nor the legislative history of CERCLA reveals the requisite clear statement by Congress, the inevitable conclusion to be drawn is that Congress did not intend to allow private citizens to file suit against a state under this statute. Accordingly, the Commonwealth of Pennsylvania's motion to dismiss shall be granted.

The court's Order was previously entered on October 28, 1983.

---

sonable costs of assessing such injury, destruction, or loss resulting from such a release.

42 U.S.C. § 9607 (emphasis added).