UNITED STATES of America, Plaintiff,

v.

CAROLAWN COMPANY, INC., et al., Defendants.

DART INDUSTRIES, INC., General Electric Company, and Keer Glass Manufacturing Corporation, Defendants and Third Party Plaintiffs,

v.

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Third Party Defendant.

Civ. A. No. 83–2162–0.

United States District Court, D. South Carolina, Columbia Division.

April 30, 1987.

Roger J. Marzulla, Asst. Atty. Gen., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Vinton D. Lide, U.S. Atty., John B. Grimball, Asst. U.S. Atty., Columbia, S.C., Quentin C. Pair, Scott C. Fulton, U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Enforcement Section, Washington, D.C., Barry Allen, Asst. Regional Counsel, U.S. E.P.A., Region 4, Atlanta, Ga., Robert Homiak, Office of Enforcement Counsel, U.S.E.P.A., Washington, D.C., for plaintiff U.S.

Melvin E. Nunnery, Nunnery & Associates, Columbia, S.C., for Carolawn Co., defendant.

Charles H. Tisdale, Jr., King & Spalding, Atlanta, Ga., for Dart Industries, Inc.

Norman A. Varney, Jr., Fairfield, Conn., for General Elec. Co.

Robert J. Kheel, New York City, for Kerr Glass Mfg. Corp.

Julius W. McKay, McKay & Guerard, P.A., Columbia, S.C., for Dart Industries, Inc., General Elec. Co., and Kerr Glass Mfg. Corp. defendants and third-party plaintiffs.

Jacquelyn S. Dickman, Asst. General Counsel, South Carolina Dept. of Health and Environmental Control, Columbia, S.C., for third party defendant.

## ORDER

PERRY, District Judge.

This matter is before the Court on motions by the third party defendant, South Carolina Department of Health and Environmental Control (DHEC), to dismiss claims asserted against it under the third party complaint or for judgment on the pleadings under Rule 12(c) Federal Rules of Civil Procedure and a motion by Dart Industries, Inc. (Dart), General Electric Company (GE) and Kerr Glass Manufacturing Corporation (Kerr), defendants and third party plaintiffs to strike the DHEC's defense. The underlying action was brought by the United States pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) 42 U.S.C. § 9607 against thirty defendants who allegedly generated certain hazardous waste materials found at the Fort Lawn, South Carolina site (generator defendants). Dart, GE and Kerr are three of the twenty generator defendants. In its complaint, the United States seeks to impose joint and several liability under CERCLA upon all defendants for costs allegedly incurred in removing the hazardous waste materials from the Fort Lawn site. The complaint alleges that the several defendants, including Dart, GE and Kerr, generated the materials which the United States removed and that those defendants are therefore liable for the costs of removal. Dart, GE and Kerr filed the instant third party complaint against DHEC alleging *inter alia* that DHEC is a responsible party under CERCLA because of DHEC's alleged active participation in the Fort Lawn operation.

The third party complaint alleges *inter alia* that Fort Lawn is an abandoned waste site located in South Carolina and that during the period 1970–1973 the site was used by South–Eastern Pollution Control (SEPCO) to store and dispose of waste solvents and other hazardous chemicals; that in 1972 the State of South Carolina issued an administrative order citing SEPCO for hav-

ing at the site materials of a known hazard level, some of which had escaped from containers and thereby causing environmental damage;[1] that thereafter South Carolina commenced a suit in its courts to compel SEPCO to clean up the site; that in 1973 SEPCO became bankrupt leaving hazardous wastes at the site; that DEHEC took no action to determine the extent of contamination or to remove wastes from the site; that in 1974 DEHEC entered into an "arrangement with Columbia Organic Chemical Company (COCC) permitting COCC to store and dispose of hazardous wastes at Fort Lawn and pursuant to which COCC would clean up SEPCO wastes; that in 1976 the principals of COCC formed a subsidiary, South Carolina Recycling and Disposal, Inc. (SCRDI) to operate the facility and in October, 1978 DEHEC granted approval to SCRDI for disposal of wastes at Fort Lawn and committed to install three monitoring wells at the site and to take samples periodically each three months to check for contamination; that DEHEC never installed the monitoring wells; that in effect DHEC, COCC and SCRDI operated the Fort Lawn site following SEPCO's bankruptcy; that on December 20, 1977 SCRDI sold the Fort Lawn site to Carolawn Company, Inc. (Carolawn) which acquired it to construct and operate a waste incinerator; that on March 14, 1978 Carolawn advised DHEC that it intended to store wastes at the site until incineration could be accomplished; that without a permit, Carolawn then solicited generators to send their wastes to the site; that Carolawn required companies interested in doing business with it to forward information to DHEC on the waste contemplated for shipment to Carolawn; that DHEC then analyzed this information and granted or denied approval for disposal of waste at Carolawn; that DHEC required each generator sending wastes to Carolawn to comply with a waste tracking manifest system, and permitted Carolawn to accept wastes for incineration although Carolawn did not obtain a permit to incinerate wastes

---

1. While not stated in the Third Party Complaint, DEHEC apparently acted pursuant to the South Carolina Pollution Control Act, Section 48–1–10 etc. Code of Laws of South Carolina, 1976, as amended.

as required by South Carolina law; that in spite of its knowledge that the site was in deplorable condition and should be cleaned up and its knowledge of serious violations of state law, DHEC continued to authorize new customers to send wastes to the site; that in 1980 Carolawn ceased operations, leaving wastes at the Fort Lawn site;[2] and that, in 1982, the United States completed clean up of wastes on the surface of the Fort Lawn site.

The third party plaintiffs asserts claims for relief against DEHEC under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) 42 U.S.C. § 9607, the South Carolina Hazardous Waste Management Act, Section 44–56–60A, Code of Laws of South Carolina, 1976, the South Carolina Pollution Control Act, Section 48–1–90, Code of Laws of South Carolina negligence, and public nuisance. They seek to have this Court enter an order (1) requiring the State of South Carolina to undertake and pay for the Remedial Investigation Feasibility Study at the Fort Lawn site; (2) declaring the respective rights and duties of the third party plaintiffs and the State of South Carolina as to the claim of the United States for clean-up costs; (3) requiring DEHEC to indemnify the third party plaintiffs for any liability they may suffer on account of the claim of the United States; and (4) enter judgment for the third party plaintiffs against DEHEC.

DEHEC has answered the third party complaint, denying liability and asserting South Carolina's sovereign immunity under the Eleventh Amendment to the United States Constitution. As stated above DEHEC now moves to dismiss the third party complaint. The third party plaintiffs move to strike DEHEC's defense.

In its motion to dismiss, DHEC argues that it is an agency of the State of South Carolina; that all activity which it took at the Fort Lawn Site was taken pursuant to its regulatory capacity and an order of a South Carolina Circuit Court[3] and that as such it is protected from liability to the third party plaintiffs under the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment provides that

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has recognized that the significance of the Eleventh Amendment "lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Article III" of the United States Constitution. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Although the Amendment prohibits suit against a State by citizens of another State, the Court has held that citizens are barred thereunder from commencing suit against their own state in federal court. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Exceptions to the Eleventh Amendment's reach do exist however. An obvious example is found where a State waives its immunity and consents to suit in a federal court. In such a case, the Eleventh Amendment does not bar the action. *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883). The Supreme Court teaches that "[a] State may

---

**2.** The Third Party Complaint alleges that the failure of DEHEC to require Carolawn to obtain a permit to store and treat hazardous wastes before receiving waste at Fort Lawn were a principal cause of any alleged hazard at the site when Carolawn ceased operations in 1980. It is further alleged that after Carolawn ceased operations, DEHEC commenced suit against Carolawn and alleged that Carolawn was storing and disposing of hazardous waste without a permit ... while, in fact, Carolawn had acted with DEHEC's "consent and active participation

through approval of further waste shipments ..." and that after Carolawn ceased operations, DEHEC assumed full control of the site through a receiver.

**3.** DEHEC asserts that it neither owns or operates the site and that the Order of the Circuit Court appointed Melvin Ernest Nunnery as receiver of the site after Carolawn ceased its operation.

effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program." *Atascadero State Hospital and California Department of Mental Health v. Scanlon*, 473 U.S. 234 n. 1, 105 S.Ct. 3142 n. 1, 87 L.Ed.2d 171 (1985). In such cases the Court requires "an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Id.* And, rejecting the notion that consent to suit in a federal court may be implied, the court insists that "constructive consent is not a doctrine commonly associated with the surrender of constitutional rights and we see no place for it here." *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974). Another exception exists where Congress, by appropriate legislation, acts to enforce the substantive provisions of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). "When acting pursuant to section 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent." *Fitzpatrick v. Bitzer, supra.* The Supreme Court has consistently held that these exceptions apply only when certain specific conditions are met. Thus, "a State will be deemed to have waived its immunity 'only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974), quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). In determining whether Congress, in exercising its Fourteenth Amendment powers, has abrogated the States' Eleventh Amendment immunity, the Supreme Court requires "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Pennhurst State School and Hospital, et al v. Halderman, et al, Halderman, et al*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) quoting *Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979). *See Atascadero State Hospital, etc. v. Missouri Public Health Dept.*, 441 U.S. 279 (1973).

DEHEC argues that CERCLA does not abrogate South Carolina's Eleventh Amendment immunity and that the instant third party complaint must be dismissed under the above cited authorities. DEHEC cites *United States v. Union Gas Company*, 575 F.Supp. 949, 950 (E.D.Pa.1983) in which a third party claim was asserted against the State of Pennsylvania under CERCLA. Both the District Court and, thereafter, the United States Court of Appeals for the Third Circuit found that the action was barred by the Eleventh Amendment. *See United States v. Union Gas Company*, 792 F.2d 372 (3d Cir.1986). However, the United States Supreme Court has now vacated the Third Circuit's ruling and remanded the case for further consideration in light of the Superfund Amendments and Reauthorization Act of 1986 ("SARA") Public Law No. 99–499. *Union Gas Company v. Pennsylvania*, 479 U.S. 1025, 107 S.Ct. 865, 93 L.Ed.2d 821 (1987). In Section 101 of SARA Congress amended CERCLA's definition of owner operator to add an exclusion for a state or local government which acquires title or possession involuntarily as a result of its function as a sovereign. Congress made it clear that states and state agencies could be liable under CERCLA and SARA for other activities that fit within the definition of operator or owner. Congress provided that the exclusion

> Shall not apply to any state or local government which has caused or contributed to the release or threatened release of a hazardous substance from the facility, and such state or local government shall be subject to the provisions of this Act in the same manner and to the same extent, both procedurally and substantively as any non governmental entity, including liability under Section 107.

*See* SARA § 101(b), 42 U.S.C. § 9601(20)(D).[4]

The third party plaintiffs argue that the above quoted language demonstrates that Congress intended that States may be held liable under CERCLA and SARA as operators of a site, thereby abrogating the state sovereign immunity under CERCLA. In its supplemental memorandum, DEHEC argues that, as to the alleged CERCLA cause of action in the third party complaint, DEHEC is not within the class of persons liable under the Act even as now amended by SARA because DEHEC has at no time owned or operated the Carolawn site; and that even if control of the site did pass to DEHEC pursuant to the receivership, the recent amendment to CERCLA provides that the term "owner or operator" does not include a unit of state government which "acquired ownership or control involuntarily through bankruptcy, tax delinquency or other circumstances" in which the state involuntarily acquires the site through its sovereign function.

Assuming the truth of the allegations of the third party complaint, the Court concludes that DEHEC did not at any time own or operate the Carolawn site. As earlier summarized, the third party complaint alleges that prior to 1973 the site was used by Southeastern Pollution Control (SEPCO) to store and dispose of certain hazardous chemicals. In 1972 the State of South Carolina issued an administrative order directing SEPCO to clean up the site. When SEPCO failed to proceed as directed, South Carolina commenced suit in its courts to compel SEPCO to clean up the site. In 1973 SEPCO declared bankruptcy. DEHEC then further attempted to determine the extent of contamination and remove wastes from the site. The third party complaint alleges that DEHEC "arranged" for Columbia Organic Chemical Company (COCC) to store and dispose of hazardous wastes at Fort Lawn[5] and that thereafter, in 1976 the principals of COOC formed a subsidiary, South Carolina Recycling and Disposal, Inc. (SCRDI) to operate the site. In 1979 DEHEC granted SCRDI approval to dispose of wastes at the site and agreed to install monitoring wells for the purpose of periodic checks of contamination levels. The third party complaint then alleges that in effect DEHEC, COCC and SCARDI operated the Fort Lawn site following SEPCO's bankruptcy until December 1977 when SCRDI sold the site to Carolawn Company. Thus all the third party complaint alleges against DEHEC is a series of regulatory actions consistent with its statutory mandate.[6] While the complaint alleges that "in effect" DEHEC, COCC and SCARDI operated the site following SEPCO's bankruptcy, no activity by DEHEC is alleged other than its original direction to SEPCO to clean up the site, its commencement of legal proceedings to compel action by SEPCO, its efforts at removal of wastes from the site, its approval of COCC's operations at the site, its subsequent approval of SCRDI to operate the site, and its monitoring activities at the site. The third party complaint does not allege that DEHEC owns the site. Moreover, DEHEC is not alleged to have transported or deposited

---

4. 42 U.S.C. § 9601(20)(D) provides

The term "owner or operator" does not include a unit of State or local government which acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign. The exclusion provided under this paragraph shall not apply to any State or local government which has caused or contributed to the release or threatened release of a hazardous substance from the facility, and such a State or local government shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title.

5. The Third Party Complaint does not state what the arrangement was or the nature of DEHEC's role in bringing it about.

6. See Section 48–1–50, Code of Laws of South Carolina, 1976 which sets forth the authority and duties of the South Carolina Department of Health and Environmental Control in controlling, managing and abating matters adversely affecting the environment.

wastes at the site or to have asserted any proprietory interest in the property other than to carry out is own statutory mandate.[7] Therefore, it does not appear that DEHEC is a responsible party under the comprehensive Environmental Response Compensation and Liability Act (CERCLA) 42 U.S.C. § 9601 *et seq.*

Moreover, as DEHEC has argued, even if "control" of the site did somehow pass to DEHEC after SEPCO declared bankruptcy, the recent amendment to CERCLA provides that the term "owner or operator" does not include a unit of state government which acquired ownership or control involuntarily through bankruptcy tax delinquency or other circumstances in which the state involuntarily acquires the site through its sovereign function, unless the state governmental unit has in some way caused or contributed to a release or threatened release of hazardous wastes.

As the South Carolina Department of Health and Environmental Control is not an owner or operator of the Fort Lawn site, it is not a responsible party under CERCLA. Moreover, it is clear that the Eleventh Amendment deprives this Court of jurisdiction to grant relief on the remaining causes of action as stated in the third party complaint. Therefore, the third party plaintiffs' motion to strike DEHEC's Eleventh Amendment defense is denied. DEHEC's motion to dismiss the third party complaint is hereby granted.

IT IS SO ORDERED.