**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0202n.06
Filed: March 27, 2006

**No. 05-3147**

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| **RACHEL HAAS, CAROL HAAS, and RICHARD HAAS,** | ) ) ) | |
| *Plaintiffs-Appellants,* | ) ) | **ON APPEAL** FROM THE UNITED STATES |
| **v.** | ) ) ) | DISTRICT COURT FOR THE NORTHERN DISTRICT |
| **QUEST RECOVERY SERVICES, INC. and STATE OF OHIO,** | ) ) ) | O F   O H I O |
| *Defendants-Appellees.* | ) ) ) | **O P I N I O N** |

BEFORE:   NORRIS and BATCHELDER, Circuit Judges; and COHN, District Judge[*]

**AVERN COHN, District Judge.**  This is a case under the Americans with Disabilities

Act (ADA), 42 U.S.C. § 12101 *et seq.*  Plaintiffs-Appellants Rachel Haas and her parents,

Carol Haas and Richard Haas (collectively referred to as the Haases), filed suit against

Defendants-Appellees Quest Recovery Services, Inc. (Quest) and the State of Ohio,[1]

alleging that Rachel Haas suffered discriminatory treatment based upon her physical

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] The complaint as originally filed named the City of Canton, Ohio, as a defendant. Plaintiffs, however, dismissed all claims against the City and amended the complaint to name the State of Ohio as a party defendant.

disabilities while she was participating in a drug and alcohol counseling program administered by Quest and ordered as part of her punishment after she pleaded guilty to operating a vehicle under the influence of alcohol. The Haases appeal the district court's dismissal of their claim against the State of Ohio under Title II of the ADA, 42 U.S.C. § 12132. We affirm.

## I. FACTUAL BACKGROUND[2]

On September 19, 2002, Rachel Haas (Haas) was operating an all-terrain vehicle in Louisville, Ohio, while intoxicated. While crossing a road, Haas was hit by a truck and suffered serious injuries, including fractures to her pelvis and arms, a partially severed hand, a crushed leg, and other internal injuries. She was hospitalized for several weeks. During the course of her treatment, her left leg was amputated above the knee, she received a prosthetic right elbow, and a metal rod was placed in her right arm. She was prescribed pain medication and a course of physical therapy upon her release from the hospital.

The local prosecutor charged Haas with driving under the influence of alcohol. OHIO REV. CODE § 4511.19(A). She pleaded guilty in the Canton, Ohio, municipal court on February 18, 2003. Prior to her sentencing, she provided the judge with a letter from

---

[2] Because the district court granted the State of Ohio's motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the factual background is taken from the first amended complaint. *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 609 n.5 (6th Cir. 2005) (noting that this Court accepts as true all of plaintiff's well-pleaded allegations when we review a grant of a motion to dismiss for failure to state a claim).

her physical therapist, stating that rehabilitation would take three to six months and that

"[a]ny disruption of this rehabilitation . . . would be very detrimental to her progress."

The municipal court judge sentenced Haas to 36 days of house arrest and required her to

participate in two six-day driver intervention programs at Quest's Massillon, Ohio,

facility.  The State of Ohio owned the building housing Quest's facility and leased it

indirectly to Quest.

Haas, who required a wheelchair, reported for her first six-day stay at Quest's

facility on March 13, 2003.  The first amended complaint describes her experience as

follows:

> Plaintiff was instructed by a Quest employee upon her arrival to proceed with her luggage to the sixth floor of the building.  When she asked where the elevator was located, she was told there was none and she would need to use the stairs.  The Quest employee refused to provide any assistance to her.  With her parents' help, Plaintiff was therefore forced to "scoot" herself up six (6) flights of stairs.  In addition to substantial physical pain, cramping, and discomfort, Plaintiff also suffered substantial embarrassment and humiliation as numerous other inmates and Quest staff members climbed the stairs past her.
>
> Initially, Quest's staff would only serve her meals in the basement. Plaintiff was thus required to hop, scoot, and crawl up and down the steps without any assistance several times a day.  Since she could not bring her wheelchair to the basement, she was forced to hop substantial distances in order to get her food and reach the table. . . .
>
> Plaintiff's wheelchair would not fit into the restroom she was required to use, which was not handicap-accessible.  Plaintiff had to sit on the floor of the co-ed shower in order to bathe herself. . . .

In addition to this situation, Haas allegedly fell down three flights of stairs while in the

facility, displacing the rod in her arm.  When her physical therapist wrote another letter

3

indicating that she was not cleared for stair climbing, she was allowed to take meals in her room, though the complaint states that staff "forgot" to deliver food on several occasions.

Despite a favorable assessment by her counselor, the first amended complaint alleges that the facility's director "advised her that her attitude had been unacceptable and her completion of the program would <u>not</u> be approved." A hearing was conducted in municipal court on April 4, 2003, which resulted in an order of confinement in the Stark County, Ohio, jail for six days beginning April 7, 2003.

## II. PROCEDURAL HISTORY

After completing her sentence without further incident, Haas and her parents filed this lawsuit. The complaint as originally filed listed six counts: (1) handicap discrimination, (2) rehabilitation act violations, (3) civil rights violations, (4) negligence/intentional tort, (5) infliction of emotional distress, and (6) loss of consortium. The Haases abandoned count three (civil rights violation) when they filed the first amended complaint.

The State of Ohio filed a motion to dismiss arguing that Eleventh Amendment immunity barred recovery and, in the alternative, the Haases did not state a valid claim for relief. The district court granted the State's motion in part, ruling that (1) Title II of the ADA does not abrogate Ohio's Eleventh Amendment immunity to the Haases' ADA claim, (2) Ohio waived its immunity to the Haases' Rehabilitation Act claim, and (3) the Haases failed to state a claim for direct discrimination against the State of Ohio.

4

On December 28, 2004, the district court entered an order of settlement, followed by another order on January 28, 2005, which provided "[n]otwithstanding the foregoing [settlement and dismissal], this entry shall have no effect upon Plaintiffs' right to appeal the Order of September 20, 2004 dismissing the Americans with Disabilities Act claims . . . on the pleadings." Quest settled the ADA and Rehabilitation Act claims against it for an undisclosed sum. The State of Ohio settled a claim under the Rehabilitation Act premised upon its ownership of the building that housed the Quest facility.

## III. ANALYSIS

### A. Standard of Review

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Simon v. Pfizer, Inc.*, 398 F.3d 765, 772 (6th Cir. 2005). A motion under Rule 12(b)(6) is granted when "it is clear that the plaintiff can prove no set of facts in support of [the] claim that would entitle [the plaintiff] to relief." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). In deciding a motion under Rule 12(b)(6), the Court accepts all of the allegations as true and construes the complaint "liberally in favor of the party opposing the motion." *Id*. The Court does not accept the "bare assertion of legal conclusions," *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), nor does the Court accept "unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The applicability of the Eleventh Amendment to claims against a state under the ADA is a question of law that we review *de novo*. *Carten v. Kent State Univ.*, 282 F.3d

5

391, 394 (6th Cir. 2002).

## B. Whether the Haases Stated a Claim Under Title II of the ADA

The Haases say that they sufficiently pleaded direct discrimination by the State of Ohio because the Canton, Ohio, municipal court, which is an arm of the Ohio court system, sentenced Rachel to her treatment program and thus caused her to suffer discrimination. Additionally, the Haases premise liability on the State of Ohio's ownership of the building that housed the Quest facility. The State responds that the Haases attempted, but failed, to link any direct action of the State with the actions of Quest, the private facility.

Title II of the ADA provides, in pertinent part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities or a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

To state a claim of disability discrimination under Title II of the ADA, a plaintiff must allege that "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under a program solely because of her disability." *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

The district court found, and the State does not contest, that the Haases satisfied the first and second elements by alleging that Rachel Haas was a qualified individual with

6

a disability. On appeal, the Haases argue, as they did before the district court, that liability should be imposed under Title II of the ADA as a result of the Canton, Ohio municipal court's practice of referring disabled individuals to non-handicap accessible drug and alcohol treatment facilities. Alternatively, the Haases argue that the State should be held liable for failing to ensure that the buildings where these activities were being conducted satisfied handicap accessibility requirements.

The district court astutely observed that the Haases are in effect suing the State of Ohio in an attempt to sue the municipal court judge. Indeed, the Haases contend on appeal that the "Canton Municipal Court treated [Rachel] far more severally [sic] than her non-handicapped counterparts." The proper inquiry for this line of argument is whether the Canton Municipal Court judge is protected by judicial immunity.

The Supreme Court has made clear that judicial immunity is overcome only in two sets of circumstances: "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Issuing an order is judicial in nature. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Thus, the Canton Municipal Court judge clearly was acting both within his jurisdiction and within his judicial capacity when he issued an order sentencing Haas to two six-day driver intervention programs.

The Haases also argue that "no logical reason exists for cloaking such routine ministerial acts [as ordering a driver intervention program] with absolute judicial

7

immunity." They argue that the order could have been made by a "court administrator, departmental chief, or some other non-judicial state officer or employee." This argument is of no moment, and the district court did not err in finding that the Canton Municipal Court judge has judicial immunity for his sentencing decision.

With respect to the Haases' position that the State of Ohio should be held liable under Title II of the ADA based on its ownership of the building housing the Quest facility, they primarily rely upon *Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998). In *Johnson*, this Court held that a public entity that leases or rents its facilities to non-public entities is subject to Title II of the ADA because it is a landlord. *Id*. at 571-72. Here, the district court found that the State of Ohio is subject to liability as a landlord because an agency of the State, the Ohio Department of Alcohol and Drug Addiction Services, leased the property housing the Quest facility to the Stark County Alcohol and Drug Addiction Services Board which, in turn, subleased the facility to Quest. Thus, the remaining question is whether Quest is a public entity and whether the State of Ohio is thereby subject to direct liability.

The *Johnson* court enumerated four factors to identify whether a facility appearing to have both public and private features is an arm of the state. Those factors include:

(1)     Whether the entity is operated with public funds;
(2)     Whether the entity's employees are considered government employees;
(3)     Whether the entity receives significant assistance from the government by provision of property or equipment; and
(4)     Whether the entity is governed by an independent board selected by members of a private organization or a board elected by the voters or

appointed by elected officials.

*Id*. at 572.

In their first amended complaint, the Haases alleged the following:

16. At all times . . . Quest acted as an agent and/or extension of the State by performing a *quasi*-governmental function under the ultimate supervision, direction, and control of the Court and/or State. . . .

38. . . . The court and/or State further subjected Plaintiff to discrimination by . . . ordering her to be confined in a privately operated system [Quest].

The district court correctly found that the Haases did not sufficiently plead that the State of Ohio is responsible for Quest's alleged wrongdoing. The first amended complaint is deficient because it does not satisfy our pleading requirements under *Johnson* for imposing liability on the State of Ohio.

### C. Whether the State of Ohio is Entitled to Eleventh Amendment Immunity for the Haases' Claim Under Title II of the ADA

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. It is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (internal citation omitted). "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the

9

Eleventh Amendment." *Id*. Eleventh Amendment immunity does not, however, apply in

two circumstances: (1) where a state has waived its immunity from suit in federal court,

and (2) where Congress has abrogated the state's immunity. *Thiokol Corp. v. Dep't of

Treas., State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). The Haases

argue that Congress abrogated the State of Ohio's immunity to claims arising under Title

II of the ADA.

In *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), the Supreme Court held that

Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid

exercise of its power under § 5 of the Fourteenth Amendment. The most recent Supreme

Court case to address Eleventh Amendment Immunity for ADA Title II claims is

*Tennessee v. Lane*, 541 U.S. 509 (2004). In *Lane*, the Supreme Court held that Title II of

the ADA is a valid exercise of Congress's § 5 authority to protect a plaintiff's due process

right of access to the courts. *Id*. at 531. The Supreme Court made clear, however, that its

holding in *Lane* was expressly limited to the question before it: whether Congress had the

power under § 5 of the Fourteenth Amendment to enforce the constitutional right of

access to the courts:

> [N]othing in our case law requires us to consider Title II, with its wide
> variety of applications, as an undifferentiated whole. Whatever might be
> said about Title II's other applications, the question presented in this case is
> not whether Congress can validly subject the States to private suits for
> money damages for failing to provide reasonable access to hockey rinks, or
> even to voting booths. . . .

*Id*. at 530-31. Accordingly, the holding in *Lane* is limited and does not provide us with

guidance for this case because the circumstances presented in *Lane* (*i.e.*, access to the courts) are not present in this case. Thus, we must look to precedent from this circuit to resolve the question before us.

In *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808 (6th Cir. 2002), a state court failed to provide the plaintiff with adequate hearing assistance during a child custody case. We held, in an *en banc* decision, that the Eleventh Amendment barred claims under Title II of the ADA based upon the Equal Protection Clause but did not bar such claims sounding in due process. *Id*. at 812. The Haases condede on appeal, as they emphasized before the district court, that their claims implicate equal protection concerns, not those of due process: "This Court should now take this opportunity to hold that Title II of the ADA has abrogated Eleventh Amendment immunity even with respect to pure claims of disparate treatment that sound solely in equal protection."

Despite our holding in *Popovich* that the Eleventh Amendment bars equal protection claims under Title II of the ADA, the Haases ask us to clarify our ruling in light of the Supreme Court's decision in *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003). In *Hibbs*, a male state employee sought damages because of alleged violations of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2612. *Id*. at 725. The Supreme Court held that Congress intended the FMLA to protect a right guaranteed by the Equal Protection Clause – specifically, the right to be free from gender-based discrimination in the workplace. *Id*. at 728. The Haases say that because the Supreme Court in *Hibbs* determined that Congress validly abrogated Eleventh Amendment

11

immunity based on the principles of equal protection, *Popovich* no longer is persuasive because *Hibbs* suggests that Congress may exercise its § 5 authority to adopt legislation imposing purely equal protection-type requirements upon the states. We find this position unavailing, however, because constitutional standards relating to gender-based discrimination (which is what was at issue in *Hibbs*) are distinguishable from those relating to discrimination of the disabled. Notably, gender-based discrimination is entitled to a heightened level of constitutional scrutiny – one that requires a gender-based classification to serve important governmental objectives and be substantially related to the achievement of those objectives. *Id*. at 736. Discrimination on the basis of a characteristic such as a disability, on the other hand, is entitled only to a "rational basis" review. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446 (1985). "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001).

In light of the narrow scope of *Lane*'s holding, which is limited to Title II ADA claims for the right of access to courts, and in light of this circuit's precedent that establishes that the Eleventh Amendment bars equal protection claims under Title II of the ADA, we find that the district court did not err in holding that the State of Ohio is entitled to Eleventh Amendment immunity for the Haases' claim under Title II of the ADA.

## IV. CONCLUSION

12

For the foregoing reasons, the decision of the district court is **AFFIRMED**.