TATEL, Circuit Judge,
concurring:
Although I agree with Judge Griffith that Shelby County is not entitled to recover attorneys’ fees, I find nothing at all “difficult” about the question whether the County is even eligible for fees under section 14(e) of the Voting Rights Act. See Op. at 1181. Resolving this case on that threshold issue, moreover, would not require us “to decide more ... [than] necessary,” id. at 1181-82 (internal quotation marks omitted) — or, for that matter, any new question of law.
*1188 Recall that Shelby County is eligible for fees only if its lawsuit — an action to invalidate the VRA’s preclearance regime— qualifies as an “action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment.” 52 U.S.C. § 10310(e). As filed and briefed, the County’s, suit does not meet this standard. Neither in its complaint nor in any brief filed in the district court, this court, or the Supreme Court did Shelby County even hint that its suit would protect any voting right guaranteed by the Fourteenth or Fifteenth Amendment. Instead, as Judge Bates recognized in rejecting the County’s request for fees, Shelby County expressly and repeatedly stated that it sought to enforce the Tenth Amendment by “vindicating] federalism interests and the ‘fundamental principle of equal sovereignty’ among the states.” Shelby County, Alabama v. Holder, 43 F.Supp.3d 47, 57 (D.D.C.2014) (quoting Compl. ¶ 43); see also Br. for Shelby County at 23, Shelby County, Alabama v. Holder, — U.S. -, 133 S.Ct. 2612, 186 L.Ed.2d 651 (2013) (contending that VRA preclearance provisions “encroach[ed] on Tenth Amendment rights”). Indeed, in its cert petition, Shelby County framed the relevant question as whether Congress’s reauthorization of Section 5 of the Voting Rights Act “exceeded its authority under the Fifteenth Amendment and thus violated the Tenth Amendment and Article IV of the United States Constitution,” and it was on this issue that the County ultimately prevailed. See Shelby County, 133 S.Ct. at 2623, 2631 (invalidating VRA’s preclearance coverage formula under Tenth Amendment). But now seeking to qualify for fees under section 14(e), the County has changed its tune, claiming that its suit in fact sought to enforce the Fourteenth and Fifteenth Amendments’ “voting guarantees,” 52 U.S.C. § 10310(e), by vindicating what it calls those Amendments’ “guarantee of local voting autonomy,” Appellant’s Reply Br. 3. This claim is meritless.
Anyone wishing to discover what “voting guarantees” the Fourteenth and Fifteenth Amendments protect must begin with the Amendments’ text. Section One of the Fifteenth Amendment provides that the “right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.” Section One of the Fourteenth Amendment declares, among other things, that “[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.”
Obviously, neither of these provisions includes any guarantee of state autonomy over voting. By its plain terms, the Fifteenth Amendment enshrines only one “voting guarantee,” i.e., the “right of citizens of the United States to vote” free from discrimination based on “race, color, or previous condition of servitude.” Furthermore, and contrary to Shelby County’s claim that the Amendment protects “state autonomy over voting,” Appellant’s Reply Br. 14, the Amendment’s prohibition against discrimination is expressly directed at the states. And although the Fourteenth Amendment says nothing about “voting guarantees” — indeed, as adopted, the Amendment did not even protect the right to vote — the Supreme Court has subsequently interpreted the Amendment’s Equal Protection Clause as “guaranteeing] the opportunity for equal participation by all voters.” Reynolds v. Sims, 377 U.S. 533, 566, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Like the Fifteenth Amendment, moreover, it secures that right against the states. The two Amendments thus “guarantee” not state autonomy, but rather the right of citizens to vote, and they expressly guarantee that right against state interference.
*1189 Shelby County, however, claims to have found a “concomitant guarantee[ ]” of local voting autonomy lurking in the two Amendments’ enforcement provisions. Appellant’s Br. 14. That Congress may enforce the Amendments only by “appropriate” legislation, the County insists, means that the enforcement provisions guarantee “the constitutional right of sovereign States ... to regulate state and local elections as they see fit.” Id. at 43. But this claim finds no support in the constitutional text. Section Two of the Fifteenth Amendment provides that “[t]he Congress, shall have power to enforce this article by appropriate legislation.” Using virtually identical language, Section Five of the Fourteenth Amendment provides that “[t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article.” By their plain text, neither clause “guarantees” any right, voting or otherwise. Rather, they give Congress power to enforce the “articles,” i.e., equal protection of the laws (Fourteenth Amendment) and the right of citizens to vote free from discrimination based on race (Fifteenth Amendment).
Shelby County cites nothing to support its argument that the two enforcement clauses somehow also protect state autonomy, and for good reason. Added to the Constitution in the wake of this nation’s bloody civil war to “take away all possibility of oppression by law because of race or color,” Ex parte Virginia, 100 U.S. 339, 345, 25 L.Ed. 676 (1880), the Amendments were intended to limit state autonomy, not protect it. Owing largely to their enforcement provisions, see id., they “established] ... the federal government as the main protector of citizens’ rights,” granting “the national state the authority to intervene in local affairs to protect the basic rights of all American citizens,” Eric Foner, The Supreme Court and the History of Reconstruction — and Vice Versa, 112 COLUMBIA L. REV. 1585, 1587 (2012).
The Supreme Court has long recognized this proposition. In Ex parte Virginia, decided just years after the Fifteenth Amendment’s ratification, the Court declared that the Reconstruction Amendments “were intended to be, what they really are, limitations of the power of the States and enlargements of the power of Congress.” 100 U.S. at 345. With respect to Congress’s power to enforce the Amendments, the Court explained:
Whatever legislation is appropriate, that is, adapted to carry out the objects the amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the enjoyment of perfect equality of civil rights and thé equal protection of the laws against State denial or invasion, if not prohibited, is brought within the domain of congressional power.
Id. at 345-46 (emphasis added). In Fitzpatrick v. Bitzer, the Court, elucidating Congress’s authority to enforce the substantive guarantees of the Fourteenth Amendment, recognized that the Amendment “quite clearly contemplates limitations on [the states’] authority.” 427 U.S. 445, 453, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). And in City of Boerne v. Flores, the Court, harkening back to Ex parte Virginia, emphasized that the Reconstruction Amendments’ enforcement provisions ensure that Congress has “the power to make the [Amendments’] substantive constitutional prohibitions against the States effective.” 521 U.S. 507, 522, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). The Court explained that they constitute a “positive grant of legislative power to Congress,” authorizing “[l]egislation which deters or remedies constitutional violations ... even if in the process it ... intrudes into legislative spheres of autonomy previously reserved to the States.” Id. at 517-18, 117 S.Ct. 2157 (internal quotation marks omitted).
*1190 Given this century and a half of precedent, rejecting Shelby County’s argument hardly requires that we “make constitutional pronouncements,” Op. at 1182 (internal quotation marks omitted), or otherwise attempt to delimit, once and for all, the precise contours of the Reconstruction Amendments, see id. at 1181, 1184-85. It suffices to recognize, as the Supreme Court has time and again, that the Fourteenth and Fifteenth Amendments protect not state autonomy, but rather individual rights “against State denial or invasion.” Ex parte Virginia, 100 U.S. at 346.
Of course, Congress’s remedial authority under the Fourteenth and Fifteenth Amendments is “not unlimited,” as it “extends only to enforcing the provisions of [those] Amendments].” City of Boerne, 521 U.S. at 518-19, 117 S.Ct. 2157 (emphasis added) (internal quotation marks and alteration omitted). But when Congress oversteps the limits of that power, it does not, as Shelby County contends, violate any “guarantee” of the Fourteenth or Fifteenth Amendment. Instead, as always happens when Congress exceeds its enumerated authority and breaches the bounds of federalism, it violates the Tenth Amendment, which reserves to the states all “powers not delegated to the United States by the Constitution, nor prohibited by it to the States.” See, e.g., Printz v. United States, 521 U.S. 898, 919, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); New York v. United States, 505 U.S. 144, 177, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Indeed, as noted above, such was the basis for Shelby County’s original complaint in this very case, as well as for the Supreme Court’s decision in the County’s favor. Put in terms of the VRA’s fee-shifting provision, then, Shelby County brought this case to enforce the federalism “guarantees” of the Tenth Amendment, not the “voting guarantees” of the Fourteenth or Fifteenth Amendment. Shelby County is thus ineligible for attorneys’ fees.
Finally, I agree with Judge Silberman that Shelby County would have been eligible for fees had it prevailed in a suit brought on behalf of voters to vindicate their Fourteenth and Fifteenth Amendment rights to be free from discrimination in voting. But that is not the case the County filed.